**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| RANDALL C. STUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:10-cv-352 |
| | ) | |
| CELLCO PARTNERSHIP | ) | |
| d/b/a VERIZON WIRELESS, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This is an employment discrimination case in which Plaintiff Randall Stutler alleges that

the Defendant, his former employer, fired him because of his Adult Attention Deficit Disorder,

in violation of the Americans with Disabilities Act. Before the Court is Defendant's Motion for

Summary Judgment [DE 30]. Because Stutler violated a work rule prohibiting employees from

using company time for personal gain, Verizon had a good reason to fire him that had nothing to

do with his disability. For this reason, and for several others, Verzion's motion will be granted.

## BACKGROUND

The material facts in this case are basically undisputed. Stutler worked for Verizon

Wireless from April of 2007 until he was fired in March of 2009. He worked as a retail sales

representative at various Verizon stores in Northern Indiana. He was responsible for selling

mobile phones and accompanying services and accessories. In September of 2008 he was

diagnosed with Adult Attention Deficit Disorder ("ADD"), a fact that he communicated to his

supervisor Remy Coles.

The incident at the heart of this case occurred on January 5, 2009. On that day a female

customer came to the Verizon store in Warsaw, Indiana where Stutler was then working and

complained to him that her cell phone was not working properly. Stutler checked into it and discovered that the phone had stopped working because the customer's service contract had expired. Stutler told her this and then explained that she had two options to get a working phone: 1) she could upgrade to a new phone at a reduced price but be locked into a two-year service agreement with a monthly charge; or 2) she could buy a new phone at full price and not be locked into the two-year service agreement. The customer explained that neither option was really affordable given her financial situation and thus declined both options.

Stutler then proposed a third option. A few months earlier Stutler had received two free phones from Verizon. He had given those phones to his parents for Christmas, but they had since returned them to him. Stutler thus told the customer that he had a phone he could sell to her in a private transaction. He explained that he would bring the phone to the store and the customer could come back in a couple of days to inspect it and see if she wanted to buy it for $125. The customer came back a few days later, at which point Stutler retrieved one of the phones from his car, brought it into the store for her to look at, and showed her its various features. The customer then agreed to pay Stutler the $125 and gave him a personal check for that amount. Stutler then programmed and activated the phone in Verizon's system and set it up to work with the customer's old phone number. The customer could have purchased this type of phone new in the store for around $450 without a service contract and for $150 with a service contract.

Fast forward two months to March 2, 2009, when that same female customer returned to the Warsaw store and complained to another employee, Joyce Judd, that her phone's battery would not stay charged. Judd informed the assistant store manager, Anthony Holston, about the

situation, and the customer proceeded to explain to Judd and Holston how Stutler had sold her one of his personal phones.  Holston reviewed the customer's account and found that indeed Stutler had put one of the phones he received from his parents on the customer's account on January 16, 2009 – it had Stutler's name on it as the former owner - and showed that he activated it at 7:01 p.m. with his personal codes.  After hearing this, Holston sent a correspondence to the store's manager, Remy Coles, explaining the situation and indicating that he considered Stutler's actions to clearly raise serious integrity issues since Stutler had received a phone from Verizon and sold it to an eligible customer during working hours.

Holston later discussed the situation with Stutler and told him that the matter was under investigation.  Stutler asked Holston what was going to happen.  According to Stutler, Holston replied, "I can't guarantee anything, but I don't see them firing you."  According to Holston, he replied that it could "easily cost" Stutler his job.  Stutler tries to make a lot out of this factual discrepancy, but it is really beside the point because no matter which version one believes, the statement from Holston was merely his opinion on what could eventually happen.  Verizon conducted an investigation of the incident, which included a review of Stutler's conduct by Ayanna Johnson, an employee in Verizon's Human Resources department. Ultimately, Johnson, Coles, and other senior employees at Verizon concluded that Stutler had violated Verizon's conflict of interest policy and that he should be terminated.

Coles and Johnson informed Stutler of that news on March 18, 2009.  The three had a conversation about the situation, and Stutler argued that he should not be fired because two other co-workers (Judd and Staccado Hoard, an assistant manager) had engaged in conduct that he thought was more serious.  Stutler hadn't witnessed these incidents, but he had heard thorugh the

grapevine that Hoard had used a co-worker's Social Security number to activate a Verizon phone for one of his friends and that Judd had intimidated a customer in the store who's husband owed her money. Stutler's argument that he shouldn't be fired because of the conduct of these other employees was not persuasive, however, and he was in fact terminated that day. Verizon did a follow-up investigation of both of these alleged incidents; neither was corroborated, but Hoard was given a written warning and Judd received verbal counseling.

Stutler filed a timely charge of discrimination with the Equal Employment Opportunity Commission alleging that his termination was the result of his ADD, which was denied. Stutler then timely initiated this suit.

## ANALYSIS

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court construes "all facts and reasonable inferences from the record in the light most favorable to [ ] the non-moving party." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005).

Stutler's Complaint is somewhat meandering and freighted with legalese, but I read it as bringing a one-count claim of disability discrimination. Specifically, Stutler alleges that Verizon violated the ADA when it terminated Stutler based on his ADD. Stutler's Response brief further confirms that he believes that this is his sole claim. [*See* DE 22 at 9.]

4

In moving for summary judgment, Verizon argued that the first of the "fatal flaws" in Stutler's case was that his experience with ADD did not meet the requirements of a disability under the ADA. Verizon admits, as it should, that ADD is recognized as a mental impairment under the ADA. But merely having a mental impairment is not enough. *Burnett v. LFW, Inc.*, 472 F.3d 471, 483 (7th Cir. 2006); *Christian v. St. Anthony Medical Center, Inc.*, 117 F.3d 1051, 1053 (7th Cir. 1997). Rather, to be disabled within the meaning of the ADA, the plaintiff must have "(A) [a] physical or mental impairment **that substantially limits one or more of the major life activities** of [the] individual . . . ." 42 U.S.C. § 12102(2) (emphasis added).

Verizon contends that Stutler cannot meet the requirement that any of his "major life activities" were "substantially limited" by his ADD. [DE 20 at 3-6.] Remarkably, Stutler completely ignored this line of argument in his Response brief, and his failure to rebut it with any affirmative evidence or counterarguments is sufficient in and of itself to grant summary judgment in Verizon's favor. *See Steen v. Myers*, 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion amounts to abandonment of claims); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (failure to offer any opposition to argument constitutes waiver). However, since its better to address claims on their merits, and since Stutler's employment discrimination claim is also fatally flawed in other ways, I'll continue with the analysis under the assumption that his ADD is sufficient to constitute a disability under the ADA.

The ADA makes it unlawful for covered employers to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In other words, it

"'prohibit[s] an employer from discriminating against a qualified individual with a disability because of the disability.'" *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005) (quoting *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999)). Therefore, "a plaintiff complaining of discriminatory discharge under the ADA must show that his or her employer would not have fired him but for his actual or perceived disability." *Serwatka v. Rockwell Automation, Inc*. 591 F.3d 957, 962 (7th Cir. 2010).

To demonstrate that Stutler was fired because of his disability, he may rely on either of two distinct and by now familiar evidentiary methods: the direct method or the indirect method. Stutler's Response brief makes it clear that he is proceeding only under the indirect method [*see* DE 22 at 10], which follows the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this method, a plaintiff must first establish a *prima facie* case of discrimination by showing that: 1) he is disabled under the ADA; 2) he was meeting his employer's legitimate employment expectations; 3) he suffered an adverse employment action; and 4) similarly situated employees without a disability were treated more favorably. *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). If a plaintiff establishes this *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment decision. *Id.* If the employer does so, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons are pretextual. *Id.*

Since he was fired, Stutler can obviously meet the third prong of the indirect method, and, as already discussed, we will assume for the purposes of this analysis that he meets the definition of disabled under the ADA. The fourth prong is a real stretch for Stutler. He claims

that two similarly situated employees without a disability – Hoard and Judd – engaged in similar conduct but were not fired for it.  Indeed, Stutler's perceived unfairness in relation to these other two employees is clearly his core frustration about the whole incident and the thing really animating his drive to bring this case – in his deposition he described it as the "reason I was mostly upset."  [DE 21-2 at 92.]  But for two reasons, this frustration doesn't translate into a successful case of discrimination under the indirect method.  First, its hard to see these two employees as truly "similarly situated" since 1) the alleged conduct of those employees was investigated but found to be unsubstantiated (as opposed to Stutler, who *admitted* his conduct) and since 2) those employees' alleged conduct did not involve the sale of their personal assets for personal profit at Verizon's expense.

More importantly, and this is truly the fatal flaw in his claim, even if Stutler could satisfy the "similarly situated" prong, he is still completely unable to satisfy the second prong – i.e., Stutler cannot show that he was meeting Verizon's legitimate employment expectations at the time he was terminated.   He admits that he sold a personal phone to a customer in the store who had originally come in to buy a phone.  Verizon fired him after it discovered this transaction and after it concluded the transaction violated its conflict of interest policy, which includes the requirement than an employee "must never use Verizon Wireless property or information for personal gain, or take personal advantage of any opportunity that arises in the course of your work for Verizon Wireless."  [DE 21-6 at 15.]  Verizon has thus presented undisputed evidence that Stutler was not adequately performing his job when he was fired.

In an attempt to rebut this evidence, Stutler's Response Brief points to only one single fact:  that he received two "excellence in service" awards in January of 2009, which he argues

demonstrates his satisfactory work performance. He also tangentially argues that since the customer he sold the phone to could not afford a phone at retail prices, his private transaction actually helped Verizon get a new customer by putting her on a Verizon Wireless contract with the used phone he sold her – thus again indicating his excellence in service. But neither the evidence of his past awards nor the theory that he believed he was actually helping Verizon are at all material to assessing whether Verizon believed Stutler was meeting its legitimate employment expectations *at the time* he was fired. As the Seventh Circuit has clearly stated, the "proper inquiry" with respect to an employer's expectations "mandates looking at [plaintiff's] job performance through the eyes of her supervisors at the time of her suspension and termination." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). *See also Weber v. Universities Research Ass'n, Inc.,* 621 F.3d 589, 594 (7th Cir. 2010) ("plaintiff bears the burden of showing that she was meeting her employer's expectations *at the time* of the adverse action") (emphasis in original). Looking through Verizon's eyes in March of 2009, after it has discovered Stutler's private sale, it was clear to the company that his performance had violated its conflict of interest policy and that his performance was thus deficient. Stutler has provided no evidence whatsoever to rebut this fact. In fact, on the contrary, Stutler's deposition itself is riddled with statements in which he recognizes his actions were wrong, apologizes for them, and expresses shame about the situation. [*See* DE 25 at 7 for a summary.] In sum, Stutler's inability to show his job performance was adequate "proves to be an insurmountable hurdle for [him]." *Gates*, 513 F.3d at 689.

Moreover, even if Stutler could get over this hurdle and somehow satisfy all four prongs of the indirect method, his claim would still be fatally flawed. If Stutler satisfied all four prongs,

the burden would shift to Verizon to articulate a legitimate, non-discriminatory reason for its employment decision. Of course, Verizon has done this: it fired Stutler for violating its conflict of interest policy. Having provided this legitimate, non-discriminatory reason, any inference of discrimination goes away and the burden shifts back to Stutler and, "to avoid summary judgment, [he] must present evidence that the reason proffered by [Verizon] is pretextual." *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005).

Stutler's attempt to meet this burden results in nothing but circular statements and unsubstantiated speculation. For instance: "In sum, Verizon has revealed that the 'real reasons' for terminating Stutler were not based upon the violation of any rule prohibiting a phone sale such as occurred in early January of 2009. Rather, the real reasons for Stutler's termination were illegitimately health-biased actions, as manifested by that ultimate discriminatory adverse employment action of a terminated employment." [DE 22 at 22.] What Stutler is forgetting to include, however, is any *evidence* that would support this sort of conclusion about the so-called "real reasons" for his firing.

Moreover, "it is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Ineichen*, 410 F.3d at 961. Thus, again, Stutler has to show that Verizon intentionally fabricated or exaggerated the precipitating incident so that it could cover up its intention to fire him based on his ADD. Stutler simply has failed to present any such evidence. In the end, there is just "nothing in the record to support a finding that [Verizon's] stated reasons for . . . terminating [Stutler] were fabrications." *Gates,* 513 F.3d at 691.

**CONCLUSION**

Thus, even construing all inferences in his favor, Stutler has not presented any evidence that would create a material question of fact by which a jury could reasonably conclude 1) that he is disabled within the meaning of the ADA, 2) that he was meeting Verizon's legitimate employment expectations at the time he was fired, or 3) that Verizon's proffered reason for firing him was pretextual. Accordingly, Cellco Partnership d/b/a Verizon Wireless's Motion for Summary Judgment [DE 30] is **GRANTED**. The clerk shall **ENTER FINAL JUDGMENT** in favor of Cellco Partnership d/b/a Verizon Wireless stating that Plaintiff Randall Stutler is entitled to no relief. The clerk shall treat this civil action as **TERMINATED**. All pending dates and motions in this case are **VACATED**.

 **SO ORDERED.**

 ENTERED: February 9, 2012

        s/ Philip P. Simon    
        PHILIP P. SIMON, CHIEF JUDGE
        UNITED STATES DISTRICT COURT